```
1  John Doe
2  Registered Agents Inc.
3  1401 21st St. STE R
4  Sacramento, CA 95811
5  Pro Se Plaintiff
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHN DOE** ) | |
| ) | Case No.: 3:24-cv-02398-LB |
| Plaintiff, ) | |
| ) | |
| vs. ) | **First Amended Complaint** |
| ) | |
| **UNITED STATES FOOD AND DRUG** ) | |
| **ADMINISTRATION,** ) | |
| **ROBERT MCKINNON CALIFF, in his official** ) | **DEMAND FOR JURY TRIAL** |
| **capacity as Commissioner, United States Food** ) | |
| **and Drug Administration, TRADER JOE'S** ) | Before The Honorable Laurel Beeler |
| **COMPANY, TARGET CORPORATION,** ) | |
| **SAFEWAY INC., and VITAMIN COTTAGE** ) | |
| **NATURAL FOOD MARKETS INC.** ) | |
| ) | |
| Defendants. ) | |
| ) | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15 (a)(1)(B), plaintiff John Doe, an individual, files this first amended complaint against defendants United States Food and Drug Administration ("FDA"), Robert McKinnon Califf, in his official capacity as the commissioner of FDA ("FDA Commissioner"), Trader Joe's Company, Target Corporation, Safeway Inc., and Vitamin Cottage Natural Food Markets Inc., for their failure to issue proper regulations or otherwise appropriately

warn against the potential health risks of consumption of seafood contaminated with mercury, and alleges as follows:

## THE PARTIES

1. Plaintiff John Doe ("Plaintiff") is an individual, and a resident of Redwood City, California.

2. Defendant FDA is an agency within the United States Department of Health and Human Services. It has statutory obligations under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301-399(f) (2022) ("FFDCA") to require certain information on food labels that enable consumers to make informed choices about food.

3. Defendant FDA Commissioner is responsible for FDA's implementation of its legal duties, and for executing the FFDCA.

4. Defendant Trader Joe's Company ("Trader Joe's") is a California corporation, with a principal place of business located at 800 S. Shamrock Ave., Monrovia, CA 91016.

5. Defendant Target Corporation ("Target") is a Minnesota corporation, with a principal place of business located at 1000 Nicollet Mall, Minneapolis, MN 55403.

6. Defendant Safeway Inc. ("Safeway") is a Delaware corporation, with a principal place of business located at 5918 Stoneridge Mall Rd, Pleasanton, CA 94588.

7. Defendant Vitamin Cottage Natural Food Markets Inc. ("Natural Grocers") is a Colorado corporation, with a principal place of business located at 12612 West Alameda Parkway, Lakewood, CO 80228.

## JURISDICTION

8. As to the claims against defendants FDA and FDA Commissioner, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (1980) (actions arising under the laws of the

United States), 28 U.S.C. § 1346 (2013) (actions against the United States), and 28 U.S.C. §§ 2201-02 (2020) (power to issue declaratory judgments in cases of actual controversy).

9. As to the claims against defendants Target and Natural Grocers, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (2011) (diversity jurisdiction) because Plaintiff and defendants Target and Natural Grocers are citizens of different states; and the matter in controversy exceeds $75,000.

10. As to the claims against defendants Trader Joe's, Target, Safeway, and Natural Grocers ("Grocery Store Defendants"), the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 (1990) (supplemental jurisdiction) because all claims in this action are part of the same case or controversy.

11. The Court has personal jurisdiction over Grocery Store Defendants. Defendants Trader Joe's and Safeway have their principal places of business in California. Defendants Trader Joe's, Target, and Safeway have minimum contacts with California because they have grocery stores across California; and this action does not offend the traditional notion of fair play and substantial justice. Defendant Natural Grocers has minimum contact with California because it directly or indirectly buys products from California farmers, producers, companies or individuals. See Docket No. 69.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1)(C) (2011) because defendants FDA and FDA Commissioner are an agency of the United States and an officer of that agency acting in his official capacity, Plaintiff resides in this judicial district, and this action does not involve real property. Venue is also proper under 28 U.S.C. § 1391(b)(2) (2011) because a substantial part of the events or omissions giving rise to the claims at issue occurred in this judicial district.

**FACTUAL ALLEGATIONS**

13. "Mercury is toxic, especially to young children and developing fetuses." Ctr. for Sci. in the Pub. Interest v. U.S. Food & Drug Admin., 74 F. Supp. 3d 295 (D.D.C. 2014). "Airborne mercury, emitted from sources like coal-fired power plants, is deposited into the ocean, is converted into methylmercury, and enters the human body through our consumption of seafood." Id at 297. "Methylmercury…is toxic. It is particularly harmful to fetuses and young children, for whom it can impair neurodevelopment." Id.

14. On July 1, 1987, the State of California listed methylmercury and methylmercury compounds as chemicals known to cause developmental toxicity. See https://oehha.ca.gov/proposition-65/chemicals/methylmercury-and-methylmercury-compounds.

15. On July 1, 1990, the State of California listed mercury and mercury compounds as chemicals known to cause developmental toxicity. See https://oehha.ca.gov/proposition-65/chemicals/mercury-and-mercury-compounds.

16. On May 1, 1996, the State of California listed methylmercury and methylmercury compounds as chemicals known to cause cancer. See https://oehha.ca.gov/proposition-65/chemicals/methylmercury-and-methylmercury-compounds.

17. In March 2004, recognizing the harm that mercury causes to human health, the FDA and the U.S. Environmental Protection Agency ("EPA") issued an online advisory entitled "What You Need to Know About Mercury in Fish and Shellfish" ("Online Advisory"). See Ctr. for Sci. in the Pub. Interest v. U.S. Food & Drug Admin at 297. The Online Advisory informed "consumers that 'some fish and shellfish contain higher levels of mercury that may harm an unborn baby or young child's developing nervous system.'" Id quoting the Online Advisory. The Online advisory also mentioned "that the health 'risks from mercury in fish and shellfish depend on the amount ... eaten

and the levels of mercury in the fish,'" Id quoting the Online Advisory. "FDA and EPA issued three recommendations for women who might become pregnant, pregnant women, women who are nursing, and children ("Target Group"): (1) do not eat shark, swordfish, tilefish, or king mackerel; (2) limit albacore tuna consumption to six ounces per week; and (3) eat up to twelve ounces of low-mercury seafood per week." Id. The Online Advisory suggested "the same for young children, but with reduced portions." Id.

18. The Center for Science in the Public Interest and Mercury Policy Project ("Center for Science"), "concerned that these recommendations were not reaching at-risk members of the public, petitioned FDA in 2011 to initiate a rulemaking that would require versions of the online recommendations [i.e. the Online Advisory] to be included in seafood labels and posted where seafood is sold. The agency has neither approved nor denied the petition [by 2014]." Id.

19. In 2014, the Center for Science filed a suit in the U.S. District Court for the District of Columbia ("D.C. District Court") to compel FDA to rule on its petition. Id. Citing different studies and authorities, the Center for Science argued that "[d]espite FDA's issuance of the Online Advisory, studies have shown that a large segment of the public, including many people in the Target Group, do not know of the risks inherent in exposing themselves or their families to mercury by eating seafood." See Id. Compl. ¶¶40-42. "At the time Plaintiffs petitioned FDA, it was in the process of evaluating its approach to mercury in seafood. According to the Administration, since publishing the 2004 Advisory [the Online Advisory], substantial evidence has emerged that fish consumption by pregnant women and young children can improve neurodevelopment even though fish contain mercury." Id at 298. The D.C. District Court finally ruled "that—given FDA's contemporaneous efforts to address mercury in seafood and because the agency has provided a general endpoint in the future at which time it will be equipped to act on Plaintiffs' petition—the

1  agency's delay [in acting on Center for Science's petition] does not warrant judicial intervention
2  at this juncture. This calculus may change, of course, once FDA and EPA finalize what is now
3  their Draft Advisory on seafood consumption. At some point thereafter, further delay could well
4  become unreasonable." Id at 306.

5      20. In 2017, FDA denied the Center for Science's petition.

6      21. In October 2021, FDA and EPA revised the Online Advisory and published it online at:
7  https://www.epa.gov/choose-fish-and-shellfish-wisely/epa-fda-advice-about-eating-fish-and-
8  shellfish. The revised Online Advisory recommends that women who might become pregnant, are
9  pregnant, are breastfeeding, and children avoid certain high-mercury species of fish (e.g., shark,
10 swordfish, tilefish, marline, bigeye tuna, and king mackerel). The revised Online Advisory also
11 recommends the aforementioned group to limit their intake of certain fish (e.g. yellowfin tuna,
12 halibut, white tuna, albacore tuna) to a recommended amount per week.

13     22. Despite posting the Online Advisory on its website for over 20 years, FDA did not issue
14 any regulation to compel grocery retailers and seafood production companies to post informational
15 mercury level and consumption limit labels on packaging or at the point of sale for seafood.

16     23. From at least January of 2016 to 2020, not knowing about the potential health risks of
17 seafood contaminated with mercury, Plaintiff purchased and consumed large amounts of the
18 aforementioned seafood, as the primary source of meat in his diet, from Grocery Store Defendants.

19     24. Plaintiff was a regular customer of Trader Joe's since at least January of 2016. From 2016
20 to 2017, he visited and shopped from Trader Joe's stores across California, including the one at
21 316 W El Camino Real, Sunnyvale, CA 94087, for at least 105 times. In that period, he bought
22 and consumed large amounts of Trader Joe's swordfish and tuna steaks which lacked informational

mercury level, potential health risk warnings, and/or consumption limit labels on packaging from that store.

25. From 2017 to 2019, Plaintiff visited and shopped from a Target store located at 3601 32nd Ave S, Grand Forks, ND 58201 for at least 30 times. In that period, he bought and consumed seafood products including tuna contaminated with mercury which lacked informational mercury level, potential health risk warnings, and/or consumption limit labels on packaging or point of sale from the aforementioned store.

26. Plaintiff was a customer of Safeway since at least January of 2016. From 2016 to 2017, he visited and shopped from Safeway's stores across California, including the one at 150 E El Camino Real, Sunnyvale, CA 94087, for at least 46 times. In that period, he bought and consumed tuna products contaminated with mercury which lacked informational mercury level, potential health risk warnings, and/or consumption limit labels on packaging or point of sale from the aforementioned store.

27. Plaintiff was a regular customer of Natural Grocers since August of 2017. From 2017 to 2019, he visited and shopped from a Natural Grocers' store located at 1901 32nd Ave S, Grand Forks, ND 58201 for at least 131 times. In that period, he bought and consumed seafood products including tuna contaminated with mercury which lacked informational mercury level, potential health risk warnings, and/or consumption limit labels on packaging or point of sale from the aforementioned store.

28. Starting from 2018, Plaintiff experienced serious health issues including neuromuscular diseases and disabilities, numbness and tingling, chronic fatigue, muscle stiffness, lower back pain, concentration problems, speech difficulties, memory issues, sensitivity to light, chronic pain, loss of sensations, and infections. All of the aforementioned symptoms are symptoms of mercury

poisoning. Some of Plaintiff's symptoms are continued to this date and might be permanent. Plaintiff's medical conditions required him to visit multiple physicians and undergo numerous medical examinations for many years, resulting in a medical file of hundreds of pages.

29. In 2020, Plaintiff's hair sample test revealed that he carries a higher than normal level of mercury. His hair mercury level was 2.6 ug/g, more than three times higher than the upper level of normal range of 0.8 ug/g.

30. Consumption of the seafood contaminated with mercury that Plaintiff purchased from the Grocery Store Defendants is a proximate cause of Plaintiff's increased body mercury level and his health issues.

## FIRST CAUSE OF ACTION: VIOLATION OF FFDCA

### (Against FDA and FDA Commissioner)

31. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

32. In 1938, Congress passed the FFDCA to prohibit, among other things, "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a) (2022). The FFDCA mandates food and food packaging standards to ensure food integrity for consumer protection.

33. FDA is the federal agency in charge of enforcing the FFDCA. 21 U.S.C. § 393 (2011). Part of its mission is to "protect the public health by ensuring that . . . foods are safe, wholesome, sanitary, and properly labeled[.]" 21 U.S.C. § 393(b)(2) (2011).

34. The FFDCA prohibits "[t]he receipt in interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise." 21 U.S.C. § 331(c) (2022).

35. Under the FFDCA, "[a] food shall be deemed to be adulterated . . . [i]f it bears or contains any poisonous or deleterious substance which may render it injurious to health[.]" 21 U.S.C. § 342(a)(1) (2005). This provision applies specifically to "added substances," id., which federal courts have held includes mercury in seafood. See United States v. Anderson Seafoods, Inc., 622 F.2d 157 (1980).

36. "A food shall be deemed to be misbranded . . . [i]f . . . its labeling is false or misleading in any particular[.]" 21 U.S.C. § 343(a)(1) (2022). A food is misbranded not only when the label reveals false or misleading information, but when "the labeling or advertising <u>fails to reveal facts</u> . . . material with respect to consequences which may result from the use of the article . . . under such conditions of use as are customary or usual." 21 U.S.C. § 321(n) (2022) (Emphasis added).

37. FDA has "[t]he authority to promulgate regulations for the efficient enforcement of [the FFDCA]." 21 U.S.C. § 371(a) (2012).

38. Since at least 2004, FDA posted the Online Advisory on its website to warn against the health risks of consumption of seafood contaminated with mercury. However, FDA did not issue any regulation to compel grocery retailers and seafood production companies to post informational mercury level, potential health risk warnings, and/or consumption limit labels on packaging and/or point of sale for seafood.

39. FDA and FDA Commissioner violated their duties under FFDCA by not issuing any regulation to compel grocery retailers and seafood production companies to post informational mercury level, potential health risk warnings, and/or consumption limit labels on packaging and/or at the point of sale for seafood products.

## SECOND CAUSE OF ACTION: NEGLIGENCE

**(Against Grocery Store Defendants)**

40. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

41. The Grocery Store Defendants sold seafood products contaminated with mercury to the Plaintiff. The Grocery Store Defendants continue to sell seafood products contaminated with mercury to consumers to this date: Defendant Trader Joe's sells, among other seafood products, ahi tuna and swordfish steaks to consumers; Defendant Target sells, among other seafood products, yellowfin tuna, skipjack tuna, and albacore tuna with "Good and Gather" brand to consumers; Defendant Safeway sells, among other seafood products, albacore tuna with "Bumble Bee" brand, yellowfin tuna with "StarKist" brand, and skipjack wild tuna with "WildPlanet" brand to consumers; Defendant Natural Grocers sells, among other seafood products, yellowfin tuna with "ORCA BAY FOODS" brand to consumers. First Amended Exhibit A shows images of seafood products contaminated with mercury that Grocery Store Defendants are currently selling to consumers without posting any informational mercury level, potential health risk warnings, or consumption limit labels on packaging.

42. The Grocery Store Defendants had a legal duty to warn against potential health risks of their seafood products which were contaminated with mercury.

43. The Grocery Store Defendants breached that duty by not posting informational mercury level, potential health risk warnings, and/or consumption limit labels on packaging and/or point of sale of the aforementioned seafood products.

44. Plaintiff was harmed as a result of consuming the mentioned seafood products.

45. The Grocery Store Defendants' breach was a direct and proximate cause of Plaintiff's resulting harm.

46. The Grocery Store Defendants' negligence was a substantial factor in causing Plaintiff's harm.

47. The Grocery Store Defendants' conduct was malicious, oppressive, and fraudulent, warranting punitive damages.

## THIRD CAUSE OF ACTION:

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Against Grocery Store Defendants)

48. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

49. The Grocery Store Defendants acted negligently as detailed in the preceding section.

50. As a direct and proximate result of the Grocery Store Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress.

51. The Grocery Store Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress.

52. The Grocery Store Defendants' conduct was malicious, oppressive, and fraudulent, warranting punitive damages.

## FOURTH CAUSE OF ACTION:

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (Against Grocery Store Defendants)

53. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

54. Plaintiff purchased seafood contaminated with mercury from the Grocery Store Defendants.

55. The Grocery Store Defendants were in the business of selling foods, including the mentioned seafoods, to buyers.

56. The seafood that Plaintiff purchased were not adequately contained, packaged, and labeled because their labels lacked informational mercury level, potential health risk warnings, and/or consumption limit labels.

57. Plaintiff was harmed as a result of consuming the aforementioned seafoods.

58. The Grocery Store Defendants' breach of implied warranty of merchantability was a substantial factor in causing Plaintiff's harm.

59. The Grocery Store Defendants' conduct was malicious, oppressive, and fraudulent, warranting punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to issue:

1. A declaratory judgment that FDA and FDA Commissioner's failure to issue regulations to compel grocery retailers and seafood production companies to post informational mercury level, potential health risk warnings, and/or consumption limit labels on packaging and/or at the point of sale for seafood products is a violation of FFDCA;

2. A judgement and order to compel FDA and FDA Commissioner to issue regulations consistent with the revised Online Advisory to require grocery retailers and seafood production companies to post informational mercury level, potential health risk warnings, and/or consumption limit labels on packaging and/or at the point of sale for seafood products;

3. A judgement and order to compel FDA and FDA Commissioner to issue regulations to require grocery retailers and seafood production companies to post informational mercury level,

potential health risk warnings, and/or consumption limit labels on packaging and/or at the point of sale for seafood products, for those groups of the general public that are not addressed by the revised Online Advisory;

4. A preliminary and a permanent injunction to prevent the Grocery Store Defendants and their officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them from selling seafood products which lack informational mercury level, potential health risk warnings, and/or consumption limit labels on packaging and/or point of sale for seafood;

5. A judgment and order requiring the Grocery Store Defendants to pay Plaintiff the compensatory and consequential damages, including damages for lost income;

6. A judgment and order requiring the Grocery Store Defendants to pay Plaintiff the emotional distress and pain and suffering damages;

7. A judgment and order requiring the Grocery Store Defendants to pay Plaintiff exemplary and/or punitive damages;

8. A judgment and order requiring the Grocery Store Defendants to pay Plaintiff the treble damages;

9. A judgment and order requiring the Grocery Store Defendants to pay Plaintiff the costs of this action and attorney fees, should the Plaintiff retain an attorney at some point in future;

10. A judgment and order requiring the Grocery Store Defendants to pay Plaintiff pre-judgment and post-judgment interests on awarded damages and fees; and

11. Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury for all issues so triable.

1 | Dated July 18, 2024. | Respectfully submitted,

2 | | */s/ John Doe*

3 | | By: John Doe
4 | | Registered Agents Inc.
5 | | 1401 21st St. STE R
6 | | Sacramento, CA 95811
7

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2024, I have caused the foregoing to be electronically filed with the Clerk of Court using CM/ECF system, which will send notification of such filing to all counsel of record.

This amended complaint will be served on the new defendant Natural Grocers upon issuance of the summons by the Court.

Dated: July 18, 2024.                                          Respectfully submitted,

                                                               */s/ John Doe*

                                                               By: John Doe
                                                               Registered Agents Inc.
                                                               1401 21st St. STE R
                                                               Sacramento, CA 95811