UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| IMAN REZANEZHAD GATABI, | Case No. 24-cv-02398-LB |
| Plaintiff, | **ORDER DISMISSING CASE** |
| v. | Re: ECF Nos. 92, 94–95 |
| UNITED STATES FOOD AND DRUG ADMINISTRATION, et al., | |
| Defendants. | |

**INTRODUCTION**

The plaintiff, an attorney who is representing himself, allegedly suffered mercury poisoning from consuming large amounts of seafood from 2016 to 2020.[1] He sued the U.S. FDA on the ground that it should have issued a regulation requiring grocers and food producers to warn consumers about the risk of mercury in seafood.[2] He sued Trader Joe's, Safeway, and Target for negligence, negligent infliction of emotional distress, and breach of the implied warranty of merchantability, generally because they failed to provide information about the known risks of mercury.[3] The FDA moved to dismiss on the grounds that (1) the plaintiff lacks standing because he cannot trace his ailments to

---

[1] First Am. Compl. (FAC) – ECF No. 71 at 6 (¶ 23). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 8–9 (¶¶ 32–39).

[3] *Id.* at 10–12 (¶¶ 40–59).

ORDER – No. 24-cv-02398-LB

mercury poisoning or to the FDA's 2017 decision to pursue a public-education campaign instead of rulemaking, and (2) no cause of action permits the plaintiff to sue the FDA.[4] The other defendants moved to dismiss primarily because the statute of limitations bars the claims.[5] The court dismisses the case on these grounds.

## STATEMENT

### 1. The Toxicity of Mercury

In 2004, FDA and the U.S. EPA issued a joint online advisory titled "What You Need to Know About Mercury in Fish and Shellfish," identifying fish with higher levels of mercury and warning that, depending on the amount eaten, consumption of fish with mercury might pose a threat to health.[6] In 2011, the Center for Science in the Public Interest filed a citizen petition with the FDA asking the agency to initiate rulemaking to require warnings about mercury on seafood packaging and at the point of sale.[7] The FDA denied the petition in 2017.[8] The FDA revised and then published the online advisory in 2021 but never issued a regulation to compel grocery retailers or seafood production companies to post mercury level or consumption limits on food labels or at the point of sale.[9]

### 2. The Plaintiff's Consumption of Seafood

From at least January 2016 to 2020, "not knowing about the potential health risks of seafood contaminated with mercury," the plaintiff "purchased and consumed large amounts of the aforementioned seafood as the primary source of meat in his diet from [the] Grocery Store Defendants," meaning, Safeway, Trader Joe's, and Target.[10] As a regular customer at Trader Joe's

---

[4] FDA Mot. – ECF No. 92 at 2–3.
[5] Mots. – ECF Nos. 94 at 2 & 95 at 2.
[6] FAC – ECF No. 71 at 4–5 (¶ 17).
[7] *Id.* at 5 (¶ 18).
[8] *Id.* at 6 (¶ 20).
[9] *Id.* (¶¶ 21–22).
[10] *Id.* (¶ 23).

ORDER – No. 24-cv-02398-LB                    2

in 2016 and 2017, he shopped at its stores in California, including a store in Sunnyvale in this district, at least 105 times and "bought and consumed large amounts of Trader Joe's swordfish and tuna steaks," which were not labeled with information about mercury levels, health risks, or consumption limits.[11] From 2017 to 2019, the plaintiff shopped at a Target store in Grand Forks, North Dakota, at least thirty times. "In that period, he bought and consumed seafood products including tuna contaminated with mercury," which also lacked labels with information about mercury levels, health risks, or consumption limits.[12] From 2016 to 2017, he shopped at Safeway in California, including a store in Sunnyvale, at least forty-six times. "In that period, he bought and consumed tuna products contaminated with mercury," which also lacked labels with information about mercury levels, health risks, or consumption limits.[13]

Starting in 2018, the plaintiff "experienced serious health issues, including neuromuscular diseases and disabilities, numbness and tingling, chronic fatigue, muscle stiffness, lower back pain, concentration problems, speech difficulties, memory issues, sensitivity to light, chronic pain, loss of sensations, and infections. All of the aforementioned symptoms are symptoms of mercury poisoning. Some of the symptoms continue to this date and might be permanent." The plaintiff's "medical conditions required him to visit multiple physicians and undergo numerous medical examinations for many years, resulting in a medical file of hundreds of pages."[14] In 2020, a test of his hair showed a higher-than-normal level of mercury: his "hair mercury level was 2.6 ug/g, more than three times the upper level of the normal range of 0.8 ug/g."[15]

### 3. Procedural History

The plaintiff claims that the FDA violated the federal Food, Drug, and Cosmetic Act by not issuing a regulation compelling grocers and food producers to warn consumers about the risk of

---

[11] *Id.* at 6–7 (¶ 24).

[12] *Id.* at 7 (¶ 25).

[13] *Id.* (¶ 26).

[14] *Id.* at 7–8 (¶ 28) (cleaned up).

[15] *Id.* at 8 (¶ 29) (cleaned up).

ORDER – No. 24-cv-02398-LB                 3

mercury in seafood.[16] He asks for declaratory and injunctive relief.[17] He sued Trader Joe's, Safeway, and Target for negligence, negligent infliction of emotional distress, and breach of the implied warranty of merchantability, generally because they failed to provide information about the known risks of mercury.[18] He asks for injunctive relief, damages, punitive damages, and attorney's fees (if he engages an attorney in the future).[19] The court has federal-question jurisdiction over the claim against the FDA, diversity jurisdiction for the claims against Target, and supplemental jurisdiction over the claims against Safeway and Trader Joe's.[20] 28 U.S.C. §§ 1331, 1332(a)(1), 1367. The parties consented to magistrate-judge jurisdiction.[21] *Id.* § 636(c). The court held a hearing on December 5, 2024.

## STANDARD OF REVIEW

1. Rule 12(b)(1)

A complaint must contain a short and plain statement of the grounds for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The party asserting jurisdiction has the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000).

A defendant's Rule 12(b)(1) jurisdictional attack can be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). If the defendant mounts a factual attack, he may rely on "affidavits or any other evidence properly before the court," in which case it

---

[16] *Id.* at 8–9 (¶¶ 32–39).
[17] *Id.* at 12–13 (¶¶ 1–3).
[18] *Id.* at 10–71 (¶¶ 40–59).
[19] *Id.* at 13 (¶¶ 4–11).
[20] *Id.* at 2–3 (¶¶ 2–4, 8–10).
[21] Consents – ECF Nos. 4, 34, 51, 62.

"becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In such cases, "[t]he district court obviously does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes." *Id.*

Dismissal of a complaint without leave to amend should be granted only when the jurisdictional defect cannot be cured by amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## 2. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020) ("[O]nly the *claim* needs to be plausible, and not the facts themselves . . . ."); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff" (cleaned up)).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

## FDA'S MOTION TO DISMISS

The FDA "protect[s] the public health by ensuring that . . . foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). It employs tools to fulfill that duty. First, it "possesses discretionary authority to 'promulgate regulations for the efficient enforcement of the Federal Food, Drug, and Cosmetic Act.'" *Compassion Over Killing v. FDA*, 849 F.3d 849, 856 (9th Cir. 2017) (quoting 21 U.S.C. § 371(a)) (cleaned up). Second, it routinely communicates with the public about food safety. *See, e.g.*, 21 U.S.C. § 375(b).[22] Given this regulatory backdrop, the FDA contends that the plaintiff lacks standing because he does not link his injuries to mercury poisoning, and he in any event cannot state a claim because there is no private right of action against the FDA.[23] The court grants the motion on these grounds.

**1. Standing**

The plaintiff challenges the FDA's failure to issue a regulation requiring retailers and seafood companies to label seafood with a warning about the health risks of mercury and seeks declaratory

---

[22] FDA Mot. – ECF No. 92 at 3 (advancing this analytic framework).

[23] *Id.* at 2.

and injunctive relief. He lacks standing because he cannot establish an injury in fact that is traceable to the challenged conduct that is likely to be redressed by a favorable decision.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* The FDA contends that (1) he has not shown traceability or an injury in fact because he has not pleaded an injury from elevated mercury levels from seafood, and (2) he has not established redressability because he cannot establish relief that redresses any injury.[24]

First, the complaint does not have allegations ascribing the plaintiff's symptoms to the consumption of fish. The plaintiff mentions no diagnosis or an effort to rule out other causes.[25] The plaintiff concedes that he has not received "a definite diagnosis [of mercury poisoning] to this date."[26] His physical injury thus is speculative and does not have the necessary causal link between his symptoms and agency conduct.

Second, labeling would not redress any physical issues. He cannot allege that he is unable to make informed choices about seafood consumption, given the allegations in the complaint. Also, it is conjecture whether the FDA — after notice and comment — would promulgate a rule, the plaintiff would then purchase and eat seafood based on that rule, and that process would address any injury.[27]

The plaintiff lacks standing.

---

[24] *Id.* at 5–6.

[25] *Id.* at 5 (making this point); Reply – ECF No. 110 at 2 (same).

[26] Opp'n – ECF No. 101 at 7.

[27] Reply – ECF No. 110 at 2 (making this point).

**2. Failure to State a Claim**

Even if the plaintiff had standing, he does not state a claim. He claims only violations of the Food, Drug, and Cosmetic Act. "Private plaintiffs may not bring actions to enforce violations of the FDCA." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 808 (9th Cir. 2020). The plaintiff concedes that he cannot state a claim under the FDCA but suggests that the court can construe his claim as a claim under the Administrative Procedures Act.[28] First, he did not plead an APA claim. Second, to do so he must suffer an injury from final agency action. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2450 (2024). The plaintiff contends that his date of injury was May 2018.[29] But as discussed above, he has not pleaded facts linking his physical state at the time to mercury from seafood, let alone the FDA's 2017 response to the citizen petition.[30]

Also, on review of an APA claim, the district court sits as an appellate tribunal and reviews the case as a matter of law. *Herguan Univ. v. Immigr. & Customs Enf't*, 258 F. Supp. 3d 1050, 1063 (N.D. Cal. 2017) (quoting *Remfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009)). The only agency action is the 2017 decision. To state a claim, the plaintiff must plausibly establish that the agency action is arbitrary and capricious. 5 U.S.C. § 706(2); *Blanchett v. DeVos*, 490 F. Supp. 3d 26, 32 (D.D.C. 2020). "'Review under the arbitrary and capricious standard is deferential[.]'" *Friends of the Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 920 (9th Cir. 2018) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007)). "[A court's] proper role is simply to ensure that the agency made no clear error of judgment that would render its action arbitrary and capricious, and [courts] require only a rational connection between facts found and conclusions made by the defendant agencies." *Id.* (cleaned up). The FDA's 2017

---

[28] Opp'n – ECF No. 101 at 4–5.

[29] *Id.* at 7.

[30] Reply – ECF No. 110 at 4 (making this point).

1  response explained the agency's decision to educate the public.[31] It is not arbitrary and
2  capricious.[32]

3  Finally, the plaintiff did not identify a discrete agency action that the FDA was required to
4  take. *Norton v. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). The FDA has authority to
5  promulgate regulations under 21 U.S.C. § 371(a), but the statute does not require it to do so. *See*
6  *Compassion Over Killing*, 849 F.3d at 856 (recognizing the FDA's discretionary authority under
7  the statute). This case does not present the "carefully circumscribed . . . situations where an agency
8  has ignored a specific legislative command." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593
9  F.3d 923, 932 (9th Cir. 2010).

\*   \*   \*

The court grants the FDA's motion to dismiss.

### GROCERY STORE DEFENDANTS' MOTIONS TO DISMISS

**1. Statute of Limitations**

Safeway, Trader Joe's, and Target primarily contend that the claims are barred by California's two-year statute of limitations.[33] The claims are time barred.

Preliminarily, the plaintiff contends that North Dakota's six-year statute of limitations applies because he first suffered injury there.[34] N.D. CENT. CODE ANN. § 28-01-16(5) (West 2023). It does not. To resolve choice-of-law questions, California courts apply the "governmental interest" analysis. *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 83 (2010). It "generally involves three steps." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107 (2006).

First, the court determines whether the relevant law of each jurisdiction is the same or different. *Id.* Here, it is different.

---

[31] Pet. Resp. – ECF No. 92-1.

[32] As discussed at the hearing, the plaintiff seemingly has no ground to assert any challenge to the 2017 Decision.

[33] Mots. – ECF Nos. 94 at 16–18 & 95 at 11–19.

[34] *See, e.g.*, Opp'n – ECF No. 106 at 6.

"Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." *Id.* at 107–08. "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied." *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989). North Dakota has no interest in the application of its statute of limitations to non-resident defendants for conduct that occurred largely in California in a case filed by a California plaintiff. California courts generally consider a foreign state to have minimal to no interest in applying its statute of limitations to cases not involving its residents as defendants.[35] *Ashland Chem. Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982) ("Statutes of limitations are designed to protect the enacting state's residents and courts from the burdens associated with the prosecution of stale cases in which memories have faded and evidence has been lost." (cleaned up)). This is dispositive.

Third, if a true conflict exists, the court "carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *Kearney*, 39 Cal. 4th at 108 (cleaned up). The court applies "the law of the state whose interest would be more impaired if its law were not applied." *Id.* (cleaned up). Again, North Dakota has minimal interest, and California's interest in any event outweighs that interest, given claims brought in a California court by a California resident regarding products sold in California stores. Safeway and Trader Joe's have their principal place of business in California, and Trader Joe's is a California corporation. (Target is a Minnesota corporation with its principal place of business there.)[36]

The relative statutes of limitations thus are California's.

The tort claims have a two-year statute of limitations. Cal. Civ. Proc. Code § 335.1 (personal-injury claims based on defective products); *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 893 (N.D. Cal. 2013); *see* Cal. Civ. Proc. Code § 340.8 (two-year statute of limitations for personal-

---

[35] Reply – ECF No. 112 at 3 (making this point).

[36] FAC – ECF No. 71 at 2 (¶¶ 4–6).

injury claims caused by exposure to harmful chemicals). The personal-injury statute of limitations applies to claims for breach of warranty. *Becker v. Volkswagen of Am., Inc.*, 52 Cal. App. 3d 794, 802 (1975); *Bennett v. Suncloud*, 56 Cal. App. 4th 91, 97 (1997) (same). To this last point, the plaintiff's assertion that a four-year statute of limitations applies to the warranty claim is wrong.[37]

Thus, the claims are barred unless they are tolled. The plaintiff contends that the discovery rule tolls the claim.[38] It does not.

"Generally speaking, a cause of action accrues at the time when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (cleaned up). The discovery rule is an exception to the accrual rule and postpones "accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* at 807.

> A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. *Norgart* explained that by discussing the discovery rule in terms of a plaintiff's suspicion of "elements" of a cause of action, it was referring to the "generic" elements of wrongdoing, causation, and harm. In so using the term "elements," we do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.

*Id.* (cleaned up).

The plaintiff must establish that the discovery rule postpones the accrual of the claim: "to rely on the discovery rule for delayed accrual of a cause of action, a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808 (cleaned up). "[I]gnorance of the legal significance of known facts" does not delay accrual. *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988).

---

[37] *See, e.g.*, Opp'n – ECF No. 106 at 10.

[38] *See, e.g., id.* at 9.

ORDER – No. 24-cv-02398-LB           11

Here, the plaintiff contends that the statute of limitations is tolled because he has not yet received a "definite diagnosis" of mercury poisoning.[39] A diagnosis is not required: the discovery rule postpones the accrual of a cause of action until a plaintiff "has reason at least to suspect a factual basis for its elements." *Fox*, 35 Cal. 4th at 806; *Miller v. Lakeside Vill. Condo. Ass'n*, 1 Cal. App. 4th 1611, 1616–18, 1624 (1991) (test for mold in July and August 1984 resulted in a report showing that a condominium unit had substantial amounts of mold; the plaintiff moved out at the advice of her doctor in October 1984; she was diagnosed with a fungal infection in January 1986 and, later that year, with an immune dysregulation caused by mold; the lawsuit filed in August 1986 was untimely because her claim accrued in October 1984, when she suffered harm in the form of allergies and asthma).

Here, the plaintiff alleged that he bought seafood starting in 2017. He alleges no purchases after 2019. He began experiencing serious health issues starting in 2018 that were symptoms of mercury poisoning. In 2020, a hair sample showed that he had more than three times the normal range of mercury. By 2018, he should have had suspicions, and by 2020, he knew about the toxicity. The complaint has no allegations supporting tolling past 2020. There are no fact issues that preclude deciding the issue as a matter of law. Statute-of-limitations issues that turn on fact disputes generally are better addressed at summary judgment, not through a motion to dismiss. *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995) (a motion for summary judgment is the proper procedure to evaluate the expiration of the statute of limitations when the inquiry turns on disputed facts); *E-Fab, Inc. v. Accounts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1320 (2007) ("However, whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law." (cleaned up)).

The two-year statute of limitations bars the claims.

---

[39] *Id.* at 10.

**2. Other Challenges to the Claims**

If the statute of limitations did not bar the claims, there are additional grounds for dismissal of some of the claims: no allegations plausibly plead negligent infliction of emotional distress, punitive damages are not recoverable, the plaintiff lacks standing to pursue injunctive relief, and attorney's fees are not recoverable.

First, the defendants contend that the plaintiff did not allege any facts about emotional distress and that in any event, the claim duplicates the negligence claim.[40] Negligent infliction of emotional distress is a form of the tort of negligence. *Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 124, 129 (1993) (like negligence, it has the following elements: (1) duty, (2) breach of duty, (3) causation, and (4) damages); *Burgess v. Super. Ct.*, 2 Cal. 4th 1064, 1072 (1992) (elements for negligent infliction of emotional distress include (1) the defendant engaged in negligent conduct involving the usual issues of duty and breach, (2) the plaintiff suffered serious emotional distress, and (3) the defendant's conduct was a substantial factor in causing the emotional distress suffered by plaintiff). There are no allegations of emotional distress, and likely this claim duplicates the negligence claim. Even if the case were not time barred, this claim would be dismissed with leave to amend.

Second, punitive damages require clear and convincing proof of oppression, fraud, or malice.[41] Cal. Civ. Proc. Code § 3924(a); *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *5 (N.D. Cal. May 31, 2011) ("Under § 3294(b), malice is defined as either: (1) conduct which is intended by the defendant to cause injury to the plaintiff or (2) 'despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.'" "California courts have defined despicable conduct as conduct which is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary people." (quoting Cal. Civ. Code § 3294(b) and cleaned up)). Negligence (two of the three claims here) generally does not justify an award of punitive damages. *Meier v. City of Brisbane*, No. 21-cv-

---

[40] Mots. – ECF Nos. 94 at 18 & 95 at 19–20.
[41] Mots. – ECF Nos. 94 at 19–21 & 95 at 20–21.

05504-DMR, 2022 WL 523327, at *6 (N.D. Cal. Feb. 22, 2022) (collecting cases). Punitive damages are not recoverable for claims that sound in contract, such as breach of an implied warranty. *Redford v. Iron Planet Inc.*, No. 11-cv-04145 NC, 2012 WL 1569819, at *4 (N.D. Cal. May 3, 2012) ("[H]is claims appear to arise out of defendants' breach of a contract between the parties, and punitive damages generally are not available for breach-of-contract claims."); *Pagtalunan v. Reunion Mortg. Inc.*, No. C-09-00162 EDL, 2009 WL 961995, at *5 (N.D. Cal. Apr. 8, 2009) ("[p]unitive damages are not available for breach of contract or [Truth in Lending Act] actions").

Third, the plaintiff has no standing for injunctive relief because he has not plausibly alleged future harm.[42] He must "show that he faces a 'real or immediate threat . . . that he will again be wronged in a similar way.'" *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Speculation about future harm is insufficient. *Id.* Where "a plaintiff vaguely alleges that he may purchase the product in the future, the Ninth Circuit and district courts have found this 'someday intention' insufficient to satisfy Article III standing" for injunctive relief. *Rodriguez v. Just Brands USA, Inc.*, No. 2:20-CV-04829-ODW (PLAx), 2021 WL 1985031, at *4 (C.D. Cal. May 18, 2021) (cleaned up) (collecting cases). But for the dismissal of the claims as time barred, a dismissal here would be with leave to amend.

A final issue is the entitlement to attorney's fees.[43] There is no claim that carries a right to recover attorney's fees. (The court appreciates that the plaintiff asked for them only if he retains an attorney.)

The plaintiff contends that the issues of punitive damages, injunctive relief, and attorney's fees are procedurally improper in a motion to dismiss.[44] As challenges to the sufficiency of the factual allegations, the motions are procedurally proper. *Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) ("The proper medium for challenging the sufficiency of factual allegations in a complaint is through Rule 12(b)(6) . . . ."); *Whittlestone, Inc. v. Handi-*

---

[42] Mots. – ECF Nos. 94 at 23–24 & 95 at 22–23.

[43] Mot. – ECF No. 94 at 21–22.

[44] Opp'n – ECF No. 106 at 12–14.

*Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (when damages are precluded as a matter of law, the issue can be raised in a Rule 12(b)(6) motion or a Rule 56 motion).

## CONCLUSION

The court grants the motions and dismisses the claims with prejudice: the claims against the FDA for lack of standing and for failure to state a claim and the claims against the grocery defendants' claims as barred by the two-year statute of limitations.

This resolves ECF Nos. 92, 94, and 95.

**IT IS SO ORDERED.**

Dated: December 10, 2024

_____
LAUREL BEELER
United States Magistrate Judge